REQUESTED BY: Senator Adrian Smith Nebraska State Legislature
I. Introduction
You have requested a legal analysis of the constitutionality of LB 1011 (Ninety-seventh Nebraska Legislature). This bill authorizes the Executive Board of the Legislative Council to create the position of Counsel to the Legislature. Among other duties, the legislation provides that such counsel may provide legal representation to the Legislature and its staff in litigation, and may initiate or intervene in litigation on behalf of the Legislature or its members. Under the bill all determinations as to negotiating, initiating, settling or otherwise proceeding with such litigation are placed in the hands of the Executive Board.
LB 1011 provides, in part, as follows:
 Section 1. The Executive Board of the Legislative Council may, as deemed necessary, employ a Counsel to the Legislature and direct the scope of such employment as provided in sections 1 to 10 of this act.
. . .
 Sec. 4. The duties and responsibilities of the Counsel to the Legislature shall be to:
 (1) Provide legal representation to the Legislature as an institution, to any member of the Legislature, or to any legislative staff member when such institution or person is sued or named as a party to litigation in his or her official capacity;
 (2) Provide legal representation to the Legislature as an institution, to any member of the Legislature, or to any legislative staff member when such institution or person is initiating litigation or intervening as a party to a lawsuit;
. . . .
 Sec. 6. Any determination made in regards to negotiating, initiating, settling, or otherwise proceeding with litigation shall be authorized by the Executive Board of the Legislative Council prior to any action by the Counsel to the Legislature.
LB 1011 also expressly removes from the codified powers of the Attorney General the authority and duty to represent the legislative branch of government in litigation. LB 1011 would add to existing statutes the language underlined below:
 84-202. The Department of Justice shall have the general control and supervision of all actions and legal proceedings in which the State of Nebraska may be a party or may be interested, and shall have charge and control of all the legal business of all departments and bureaus of the state, or of any office thereof, which requires the services of attorney or counsel in order to protect the interests of the state except as provided in sections 1 to 10 of this act.
 84-205. The duties of the Attorney General shall be:
 (1) To appear and defend actions and claims against the state except as provided in sections 1 to 10 of this act;
. . . .
 (10) To appear for the state and prosecute and defend all civil or criminal actions and proceedings in the Court of Appeals or Supreme Court in which the state is interested or a party except as provided in sections 1 to 10 of this act.
LB 1011 (Ninety-seventh Nebraska Legislature).
Based on the provisions of the bill set forth above, we believe your request presents two issues of state constitutional law. The first is whether LB 1011 violates the separation of powers provision of articleII, section 1 of the Nebraska Constitution by authorizing the exercise of executive powers by the legislative branch. The second is whether LB 1011 violates article IV, section 1 of the Nebraska Constitution by infringing on the constitutional authority of the Nebraska Attorney General. As the answer to the first question is dispositive, we will discuss only that issue in this opinion.
II. Analysis of the LB 1011
 A. The Separation of Powers is a Fundamental and Important Component of Nebraska State Government.
The Nebraska Supreme Court has commented extensively on the history and importance of the constitutional separation of powers. According to the Court, "The purpose . . . is to establish the permanent framework of our system of government and to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which our government is to be conducted." State v. Philipps,246 Neb. 610, 614, 521 N.W.2d 913 (1994). The Court has repeatedly emphasized the fundamental importance of the separation of powers:
 The division of governmental powers into executive, legislative and judicial in this country is a subject familiar, not only to lawyers and students, but is a part of the common knowledge of the citizen. It represents, probably, the most important principle of government declaring and guaranteeing the liberties of the people. . . .
Searle v. Yensen, 118 Neb. 835, 841, 226 N.W. 464 (1929) (emphasis added).
 Montesquieu suggested a government with legislative, executive and judicial departments, each independent of the other. The framers of the American Constitution and the people of Nebraska adopted that plan. It has been regarded by statesmen and philosophers as an outstanding advancement in the science of government. Throughout the judicial history of the present system the courts have scrupulously respected the prerogatives of the legislative and executive departments. . . .
State ex rel. Sorensen v. State Bank of Minatare, 123 Neb. 109, 114,242 N.W. 278 (1932).
As the Nebraska Supreme Court stated 116 years ago, "It cannot be denied that one great object of written constitutions is to keep thedepartments of government as distinct as possible; and for this purposeto impose restraints designed to have that effect." State ex rel. City of Lincoln v. Babcock, 19 Neb. 230, 239, 27 N.W. 98 (1886) (quoting "Webster, in his speech on the Independence of the Judiciary, vol. 3, p. 26") (emphasis added).
 B. Nebraska's Constitution Contains an Express Provision Requiring the Separation of Governmental Powers.
Nebraska's Constitution expressly divides state government into three spheres of power and then prohibits the exercise of any power belonging to one sphere by either of the others:
 The powers of the government of this state are divided into three distinct departments, the legislative, executive, and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.
Neb. Const. art. II, § 1 (emphasis added).
Thus, on its face, article II, section 1 of the Nebraska Constitution requires a stringent separation of the three branches of government.
 C. Nebraska's Separation of Powers Provision is More Rigorous than Other Jurisdictions' and has been Strictly Construed by the Nebraska Supreme Court.
Article II, section 1 of Nebraska's Constitution requires a more rigorous separation of powers than is required in many other jurisdictions. For example, as noted by the Nebraska Supreme Court, "The federal separation of powers principle is inferred from the overall structure of the U.S. Constitution. In contrast, Neb. Const. art. II, § 1, prohibits one department of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives, except as the Constitution itself otherwise directs of permits. . . . Thus, the federal doctrine is not as rigorous as that imposed by the Constitution of this state." Philipps,246 Neb. at 614.
Furthermore, the separation of powers doctrine has been strictly construed by the Nebraska Supreme Court. State ex rel. Meyer v. State Bd. of Equalization and Assessment, 185 Neb. 490, 176 N.W.2d 920 (1970). With regard to article II, section 1, the Nebraska Supreme Court has stated, "Nebraska's Constitution contains an absolute prohibition uponthe exercise of the executive, legislative and judicial powers by thesame person or the same group of persons. It has remained a part of the Constitution unchanged since 1875. It is more certain and positive thanthe provisions of the Federal constitution and those of some of thestates, which merely definitely divided the three powers of government, Laverty v. Cochran, 132 Neb. 118, 120-121, 271 N.W. 354 (1937) (emphasis added).
 D. Article II, Section 1 Operates as a Limitation on Legislative Power.
When analyzing whether a piece of legislation oversteps legislative authority, one must start with the proposition that the Nebraska Legislature has plenary authority. State ex rel. Stenberg v. Moore,249 Neb. 589, 595, 544 N.W.2d 344 (1996). This broad authority exists because the "Nebraska Constitution is not a grant, but, rather is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution." Id.
The legislative authority of the Nebraska Unicameral is, therefore, extensive. However, it is not limitless. "The people of the state, by adopting a Constitution, have put it beyond the power of the legislature to pass laws in violation thereof." State ex rel. Randall v. Hall,125 Neb. 236, 242-243, 249 N.W. 756 (1933) (discussing the importance and history of the separation of powers doctrine). See also Laverty,132 Neb. at 121 ("[T]he Constitution is still recognized as the supreme law of the state and as a limitation of power of all departments and all officials."); State ex rel. Meyer v. State Bd. of Equalization 
Assessment, 185 Neb. at 500 ("There is one thing, however, which [the Legislature] cannot do, and this is inherent in Article II, section 1, Constitution of Nebraska. It cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of government. . . .").
Thus, the authority of the Legislature, while very broad, is subject to any limitations contained in the Nebraska Constitution. One such constitutional limitation on the authority of the Legislature is article II, section 1. The Nebraska Supreme Court has repeatedly held that article II, section 1 prohibits one department of government from encroaching on the duties and prerogatives of the others or exercising any power belonging to another branch, except as the Constitution itself otherwise directs or permits. State v. Divis, 256 Neb. 328, 332,589 N.W.2d 537 (1999); In re Interest of Constance G., 254 Neb. 96, 101,575 N.W.2d 133 (1998); State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n, 251 Neb. 517, 532, 557 N.W.2d 684 (1997).
As the Nebraska Supreme Court has emphasized, "[T]he separation of powers clause serves as the beam from which our system of checks and balances is suspended." Shepherd, 251 Neb. at 524. See also State ex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991); State ex rel. Sorensen v. State Bd. of Equalization and Assessment, 123 Neb. at 114,242 N.W. at 281 ("It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution."); Searle v. Yensen, 118 Neb. at 842 ("Otherwise a confusion and duplication of powers would result, against which [article II, section 1] is directed."); Op. Att'y Gen. No. 92004 (Jan. 9, 1992).
Thus, article II, section 1 operates as a limitation on the power of the Nebraska Legislature to legislate.
 E. Under Article II, Section 1, the Legislature May Not Enact Laws Authorizing the Legislative Branch to Exercise Any Power Properly Belonging to the Executive Branch.
Under the Nebraska Supreme Court's strict interpretation of article II, section 1, the key issue presented here is whether LB 1011 authorizes the exercise of any executive power or function by the legislative branch. Similar questions have been addressed by the Nebraska Supreme Court for over 100 years. For example, a number of Nebraska cases have involved the question of whether the Legislature may regulate the practice of law. As stated in one such case, "The issue to be determined is whether the court must acquiesce in the qualifications for admission to the bar as prescribed by the Legislature. Does the legislative or judicial department have authority to prescribe rules for admission to the bar?" State ex rel. Ralston v. Turner, 141 Neb. 556, 559, 4 N.W.2d 302
(1942). In Turner, the Court concluded the "Power to admit applicants to practice law is judicial, not legislative, and invested in courts only. . . ." Id. at 568 (quoting In re Cate, 273 P. 617). See also State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N.W. 95 (1936).
Other cases have involved questions of executive authority. In In re Railroad Commissioners, 15 Neb. 679, 50 N.W. 276 (1884), the Court discussed the constitutionality of the creation of the office of Railway Commissioner by the Legislature. The Court concluded the office would fall under the executive branch as its duties "would be to aid in carrying the laws into effect." Id. at 682.[1] See also State ex rel. Shepherd, 251 Neb. at 532, 557 N.W.2d at 695 (declaring a statute unconstitutional which granted executive authority to the Public Counsel).
Thus, the analysis of LB 1011 under article II, section 1 entails the delineation of the powers of the respective branches of government and the identification of what powers are affected by LB 1011. "[G]enerally judicial power is the authority to hear and determine a controversy as to rights and upon such determination to render a judgment binding upon the disputants." Laverty v. Cochran, 132 Neb. 118, 122,271 N.W. 354 (1937). Judicial power is not implicated by LB 1011. Legislative power is the power to enact legislation and make law. Williams v. Buffalo County, 181 Neb. 233, 239, 147 N.W.2d 776, 781
(1967). Executive power entails carrying into effect the laws enacted by the legislature. See State ex rel. Morris v. Marsh, 183 Neb. 521, 546,162 N.W.2d 262, 277 (1968).
 F. Litigation is an Executive Function in State Government and is a Duty Properly Belonging to the Executive Branch.
As set forth above, LB 1011 removes significant litigation authority from the Attorney General and transfers it to the Counsel to the Legislature and the Executive Board of the Legislative Council. The question, then, is whether this litigation authority is a function of the executive branch such that its transfer to the legislative branch would violate article II, section 1.
There is no question that the Nebraska Attorney General is an executive branch officer. See State ex rel. Caldwell v. Peterson,153 Neb. 402, 407, 45 N.W.2d 122 (1950). This fact has been undisputed since the state Constitution was adopted. See 1885-86 Report of the Attorney General 3 ("The Constitution of 1875 makes the Attorney General an executive officer of the State. . . ."). The Counsel to the Legislature, as proposed by LB 1011, is clearly part of the Legislative branch. The bill expressly provides that the Counsel is to be employed by the Executive Board of the Legislative Council. (LB 1011, section 1). It further provides that all major decisions regarding litigation are to be made by the Executive Board of the Legislative Council (LB 1011, section 6). The Executive Board consists of eight members of the Legislature. See Neb. Rev. Stat § 50-401.01 (Cum. Supp. 2001). The Legislative Council consists of "all of the members of the Legislature" pursuant to Neb. Rev. Stat. § 50-401. See Spire v. Conway, 238 Neb. at 782 ("It is beyond debate that a senator is a member of the legislative branch and exercises the powers of that branch."). See also State ex rel. Shepherd,251 Neb. at 525, 557 N.W.2d at 691 (concluding the Public Counsel [Ombudsman] is an officer of the legislative branch).
Since LB 1011 transfers litigation authority from an executive officer to the legislative branch, the determination upon which the constitutionality of LB 1011 rests, under article II, section 1, is whether litigation is an executive function.
As discussed above, executive power entails carrying into effect the laws passed by the Legislature. In general, "the executive department is that which is charged with carrying the laws into effect and securing their due observance." Black's Law Dictionary 678 (rev. 4th ed. 1968). See also State ex rel. Morris v. Marsh, 183 Neb. 521, 546, 162 N.W.2d 262,277 (1968) ("The Nebraska Constitution provides for a republican form of government, for a bill of rights and for the separation of powers. It authorizes the executive branch to place the powers of government inoperation. . . .") (emphasis added).
Litigation must necessarily be a function of the executive branch since its effect is to carry laws into effect and secure their due observance. The fact that litigation is not expressly mentioned in the Nebraska Constitution as a duty of the Attorney General is not surprising. See State v. Babcock, 19 Neb. at 239. Nor does the absence of such a provision in the Constitution make the performance of litigation by the legislative branch fair game. As the Nebraska Supreme Court has repeatedly stated with regard to the regulation of the practice of law, "The Constitution does not, by any express grant, cast the power to define and regulate the practice of law in any of the three departments of government. In the absence of an express grant of this power to anyone of the three departments, it must be exercised by the department towhich it naturally belongs because `It is a fundamental principle ofconstitutional law that each department of government, whether federal orstate, "has, without any express grant, the inherent right to accomplishall objects naturally within the orbit of that department, not expresslylimited by the fact of the existence of a similar power elsewhere or theexpress limitations of the Constitution." . . .'" State v. Joubert,246 Neb. 287, 295, 518 N.W.2d 887 (1994) (quoting In re Integration of Nebraska State Bar Ass'n., 133 Neb. 283, 285, 275 N.W. 265, 266 (1937)) (emphasis added).
Nebraska case law supports the proposition that litigation is an executive function by which the Attorney General enforces or carries into effect the laws and places the powers of government in operation. As the Nebraska Supreme Court has stated, "The attorney general is given executive powers in regard to various matters committed to his care." State ex rel. Sorensen v. State Bd. of Equalization and Assessment,123 Neb. at 261. "Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the State's litigation which he deems for its best interest." Id. (quoting State v. Finch, 128 Kan. 665). "The attorney general is, generally speaking, the attorney for the state. It is his duty to devote his time and energies to that employment, as it is the duty of attorneys generally to appear and defend the rights of their clients in the litigation in which they are employed. He is given executive powers in regard to various matterscommitted to his care." Follmer v. State, 94 Neb. 217, 220, 142 N.W. 908
(1913) (emphasis added).
The Nebraska Supreme has been wary of encroachment on the executive power to litigate. In rejecting the court's own ability to direct the disposition of one case by the factual determinations of another, the Nebraska Supreme Court stated:
 In examining prosecutorial discretion we would of necessity have to independently gather evidence. The gathering of evidence is not a judicial function but one of the executive. We would then determine what charges we think should have been filed. Again, this is an executive function of the prosecutor. We would make a judgment about the chances of a conviction as against an acquittal, again an executive function. We would need to weigh the advisability of a plea bargain to secure a conviction on a lesser charge in order to avoid a likely acquittal of all charges. These are all clearly executive and not judicial functions.
State v. Moore, 210 Neb. 457, 475, 316 N.W.2d 33, 43 (1982), cert. den., 456 U.S. 984 (1982) (emphasis added).
Other state and federal court decisions also support the principle that litigation is an executive function. The United States Supreme Court noted: "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." Springer v. Government of the Philippine Islands, 277 U.S. 189,202, 48 S.Ct. 480 (1928).
In a case involving the constitutionality of legislation that is similar, in many respects, to LB 1011, the Supreme Court of Arizona specifically concluded that "conducting litigation on behalf of the state. . . is an executive function, because doing so carries out the purposesof the Legislature." State ex rel. Woods v. Block, 189 Ariz. 269, 277,942 P.2d 428, 436 (1997) (emphasis added). In Woods, the court concluded a "Constitutional Defense Council," which was controlled by the Legislature and which conducted litigation, was unconstitutional because the Legislature was exercising an executive function. Id. at 278,942 P.2d at 437.
A more detailed discussion of Woods is helpful to the analysis of LB 1011. In Woods, the court held that, despite the limited constitutional power of the Attorney General of Arizona, id. at 431 ("In Arizona [unlike Nebraska], the Attorney General has no common law powers"), a legislatively created position called the Constitutional Defense Council ("CDC") (whose powers included initiating and pursuing any action concerning a law, regulation, order, policy or decision of the federal government and hiring outside legal counsel to pursue such actions) was unconstitutional under Arizona's separation of powers clause [which is very similar to Nebraska's article II, section 1].
The court found that the CDC was "a legislatively created or controlled body." Id. at 435. It further concluded that the CDC's functions were executive in nature:
 The United States Supreme Court has held that litigation conducted on behalf of the United States is `subject to the direction, and within the control of, the Attorney General.' Buckley v. Valeo, 424 U.S. 1,139 . . . (1976) (quoting Confiscation Cases, 74 U.S. 454, 458-59 (1868)). In the same respect, conducting litigation on behalf of the State, as authorized by the Legislature, is an executive function, because doing so carries out the purposes of the Legislature.
Id. at 436. See also id. at 436 ("The Legislature's actions . . . show its intent to take over an executive function by eliminating the Attorney General from the litigation process. . . .").
In conclusion, the court stated,
 CDC performs an executive function, yet is controlled by members appointed by representatives of the Legislature. . . . The practical result of the legislation is to create conflict between an executive agency and a legislative agency performing an executive function. All of the . . . factors support a finding that CDC is a legislative body performing an executive function. [The statute] is therefore unconstitutional because it violates the express terms of [the separation of powers provision] of the Arizona Constitution.
Id. at 437.
A Nebraska Court reached the same conclusion with respect to a statute attempting to transfer duties from the state auditor to a legislatively created position. In State v. Primeau, Doc. 496, Page 039 (Dist. Ct. Lancaster Co. 1994) the court discussed the separation of powers doctrine under the Nebraska Constitution as well as relevant case law:
 In Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779
(1957), the Supreme Court of Arizona held that statutory provisions relating to reimbursement of members of the Legislature for expenses, which provided that such claims were exempt from review by the State Auditor, were unconstitutional as an attempt to transfer to the Legislature the function of auditing delegated by the Constitution to the executive department. This case is directly applicable to any attempt by the Nebraska Legislature to prevent the State Auditor from auditing legislative records, expense accounts or other claims paid from state treasury. The Arizona Constitution is identical to that of Nebraska in its designation of the auditor as an executive official whose duties "shall be as prescribed by law." Id. at 784. The Giss court framed the issue before it as whether "the auditing of claims against the state is a function or power properly belonging to the executive rather than the legislative department." Id. at 785. (This is the same language the Nebraska Constitution contains with respect to the separation of powers in Article II, § 1). The court in Giss concluded that auditing of the expenses of member of the Legislature is an executive function which is vested in the State Auditor. Id. at 787.
Following this analysis, the court declared the Nebraska statute unconstitutional as a violation of article II, section 1. See also Op. Att'y Gen. No. 93012 (March 4, 1993) (concluding this bill would be declared unconstitutional).
It is true the Legislature may take a keen interest in the enforcement, interpretation or defense of the laws it passes. However, the fact that the Legislature takes such an interest does not make litigation concerning such laws a legislative function. See Shepherd,251 Neb. at 532 ("The legislature can neither enforce the laws which it has the power to make, nor . . . appoint the agents charged with the duty of such enforcement."). Furthermore, the fact that the Attorney General may be called upon to litigate at the request of the Legislature does not transform or negate the executive nature of litigation. Even in a dispute between the Legislature and an executive branch officer the Attorney General may properly bring an action on behalf of the Legislature. In State ex rel. Meyer, 185 Neb. at 491, the Attorney General brought an action "at the express request of the Legislature" seeking "to have certain appropriations vetoed by the Governor declared void and to uphold certain personal service limitations placed in the appropriation bills by the Legislature." See also State ex rel. Stenberg v. Moore, 253 Neb. 535,571 N.W.2d 317 (1997) (action brought at request of Legislature to determine retirement benefits of certain school employees).
Thus, we believe there is little or no doubt the Nebraska Supreme Court would find that litigation is an executive function in state government. Our conclusion regarding the respective roles of the legislative and executive branches in this regard is not novel or new. As former Attorney General Robert Spire stated:
 [I]t is the function of the Legislature to enact legislation, and not to interpret or enforce existing statutory provisions. Consequently, it would serve no valid legislative purpose to issue an opinion to a legislator concerning the interpretation and enforcement of a particular statute, when the Legislature has no authority in this regard. This responsibility is the function of the executive branch of the government and under our separation powers doctrine it is essential that no one branch encroach upon the powers reserved to another.
Op. Att'y Gen. No. 157 (Dec. 24, 1985). [2]
III. Conclusion
As the Nebraska Supreme Court has stated on many occasions, "In accordance with constitutional provisions separating the departments of government, the legislature cannot interfere with, or exercise any powers properly belonging to, the executive department." State ex rel. Shepherd,251 Neb at 532, 557 N.W.2d at 695 (quoting 16 C.J.S. Constitutional Law § 134 at 434 (1984)). Since LB 1011 authorizes legislative officials to exercise powers properly belonging to the executive branch, the bill violates the separation of powers provision of the Nebraska Constitution, and we therefore conclude the bill would be found unconstitutional by the Nebraska Supreme Court.
Sincerely,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved by:
_______________________________ Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
[1] The Court then concluded the creation of the office would violate what was then article V, § 26 of the Nebraska Constitution. This provision, in amended form, is now Article IV, § 27. It provides: "No executive state office other than herein provided shall be created except by a two-thirds majority all of members elected to the Legislature." Neb. Const. art. IV, § 27. Thus, if LB 1011 were amended so as to make the new Counsel to the Legislature an independent executive official, the bill would avoid review under article II, section 1. However, its creation would require a two-thirds vote, and the Legislature could not appoint the Counsel or control the office. See Shepherd, 251 Neb. at 532. Furthermore, the legislation would still be subject to review as a violation of the constitutional authority of the Attorney General. LB 1011, however, clearly provides for control of the Counsel position by the Legislature and is, therefore, subject to scrutiny under Article II, section 1.
[2] The fact that litigation is an executive function, rather than legislative, is underscored by the fact that the Nebraska Legislature would rarely have standing to bring a lawsuit on its own. See Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312 (1997).